IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 14 C 4081 |
| | ) | |
| ARTEX RISK SOLUTIONS, INC., | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner United States of America's motion for order to show cause. For the reasons stated below, the motion is granted.

## BACKGROUND

Petitioner contends that the Internal Revenue Service (IRS) is conducting an investigation of Respondent Artex Risk Solutions, Inc. (Artex). The IRS is allegedly examining Artex's role in transactions involving captive insurance plans under 26 U.S.C. § 831, and investigating whether such transactions constitute abusive transactions. On December 19, 2013, the IRS issued two IRS administrative summonses (Summonses) to Artex. The Summonses directed a representative of Artex to appear before Revenue Agent Robert W. Meyer (Meyer) on January 9,

2014, give testimony, and produce for examination records and documents, including contracts, policies, promotional materials, and claims related to a captive insurance program or arrangement, as described in the Summonses.  On January 9, 2014, an Artex representative allegedly appeared before Meyer, but failed to provide testimony or produce any documents.  Artex has allegedly subsequently refused to comply with the Summonses.  The IRS contends that the information and records that are sought in the Summonses may be relevant to the investigation of Artex and may shed light on whether Artex is subject to liability.  Petitioner brought the instant action seeking to enforce the Summonses, and Petitioner has now filed a motion for rule to show cause as to why Artex should not have to comply with the Summonses.

## DISCUSSION

Congress, has provided the "IRS with extensive authority to conduct effective tax investigations" and "[a]s a necessary incident to this investigatory power, Congress gave the [IRS] expansive authority in § 7602(a) to summon any person to provide information relevant to a particular tax inquiry." *United States v. Crum*, 288 F.3d 332, 333 (7th Cir. 2002).  The IRS, however, is not empowered with authority to enforce the summons that it issues. *United States v. BDO Seidman*, 337 F.3d 802, 809-10 (7th Cir. 2003).  The IRS must "apply to the district court to secure an enforcement order" when "a taxpayer fails to comply with a summons. . . ." *Id.* (citing 26 U.S.C. § 7604).  In a proceeding in which the IRS is seeking to enforce a summons, the IRS must first make out a *prima facie* case.  *Khan v. United States*,

548 F.3d 549, 554 (7th Cir. 2008); *Miller v. United States*, 150 F.3d 770, 772 (7th Cir. 1998)(citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)); *see also BDO Seidman*, 337 F.3d at 809-10 (stating that in determining whether an IRS administrative summonses should be enforced, a court "must scrutinize them to determine whether they are made in good faith and seek information relevant to a legitimate investigative purpose"); *see also United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999)("[t]he *Powell* requirements impose only a 'minimal burden' on the agency" and "[t]hey can usually be satisfied by an affidavit stating that the government has met them"). If the Government is able to "make[] a prima facie showing of good faith, the burden shifts to the respondent to show that the enforcement of the summons would constitute an abuse of process." *BDO Seidman*, 337 F.3d at 809-10; *see also Miller*, 150 F.3d at 772 (stating that "[t]he *Powell* requirements impose only a minimal burden on the agency"); *Knox, Inc.*, 187 F.3d at 759 (stating that "[t]he taxpayer can rebut the government's prima facie case only by alleging 'specific facts' in rebuttal").

## DISCUSSION

Petitioner argues that it has satisfied all of the necessary steps to present a *prima facie* case and warrant enforcement of the Summonses. Artex argues that Petitioner has not presented a *prima facie* case. Artex also argues that the Summonses are an abuse of the IRS's power.

I. Evidentiary Hearing and Discovery

Artex argues that "[t]o the extent any of the necessary facts . . . are in dispute, respondent is entitled to an evidentiary hearing. . . ." (Ans. 7). However, the Seventh Circuit has made clear that "[s]ummons enforcement proceedings are intended to be summary in nature, and it is left to the district court's discretion to determine whether a hearing is necessary." *BDO Seidman*, 337 F.3d at 810 (internal quotations omitted)(quoting *2121 Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1224 (7th Cir. 1997)); *see also United States v. Utecht*, 238 F.3d 882, 887 (7th Cir. 2001)(stating that the taxpayer "bears the burden of making a *prima facie* showing before the district court must hold a hearing to investigate whether the IRS abused its civil summons power" and that the taxpayer "must present specific, detailed, and material facts in order to carry this burden"); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir. 1981)(stating that "[i]n discussing the relative burdens of the parties in summons enforcement actions," the court could not "stress too emphatically that these proceedings are intended to be summary in nature"); *Adams v. I.R.S.*, 1999 WL 1001584, at *6 (N.D. Ind. 1999)(stating "only if the taxpayer has alleged specific facts that permit an inference of some improper purpose on the part of the government is the taxpayer entitled to an evidentiary hearing"). Artex has not pointed to any material disputed facts or facts indicating bad faith on the part of the IRS that need to be resolved in an evidentiary hearing prior to a ruling on Petitioner's motion. Artex has failed to provide information to the IRS in a timely fashion, and has further delayed its production while the IRS followed the procedures to enforce

the Summonses.  Artex has not provided sufficient justification to allow a further delay in its compliance by the scheduling of an evidentiary hearing prior to a ruling on Petitioner's motion.  Summons enforcement actions are intended to be summary proceedings and Artex has not pointed to extraordinary circumstances or specific facts that warrant an evidentiary hearing in this case.  Therefore, Artex's request for an evidentiary hearing is denied.

Artex also requests leave to conduct discovery in this case before the court rules on the instant motion.  (Ans. Mot. 12).  There is ample evidence in the record to enable the court to rule on the instant motion without discovery.  As indicated above, the summons enforcement process should be summary in nature and Artex has not pointed to any specific need to conduct discovery in this case.  Therefore, Artex's request for discovery is denied.

II.  *Prima Facie* Case

Petitioner argues that it can establish a *prima facie* case.  To make a *prima facie* case in a summons enforcement action, the IRS must establish: (1) that "the summons was issued for a legitimate purpose," (2) that "the summoned data may be relevant to that purpose," (3) that "the data is not already in the Government's possession," and (4) that "the administrative steps required by the Internal Revenue Code for issuance and service have been followed." *Khan*, 548 F.3d at 554 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964))(stating that "the United States must not violate provisions of § 7602, including § 7602(d)(1), designed to ensure the

summons is issued in good faith"); *see also Miller*, 150 F.3d at 772 (stating that the IRS must make out a *prima facie* case, by establishing: (1) "that the investigation has a proper purpose," (2) that "the information sought may be relevant to that purpose," (3) that "the IRS does not already have the information," and (4) that "the IRS has followed the statutory requirements for issuing a summons"); *Kis*, 658 F.2d at 536 (stating that "*United States v. Powell* . . . established the elements of the prima facie case that the Government must present" and that "[t]he burden is a slight one, for the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted").

A. Legitimate Purpose and Relevant Information

Petitioner contends that the investigation of Artex is being prosecuted for a legitimate purpose and that the IRS is seeking relevant information. The IRS is provided with authority to issue a summons "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability. . . ." 26 U.S.C. § 7602(a). In the context of summons enforcement, "the standard for relevancy . . . is relaxed" and information is deemed relevant if it has "the potential to shed some light on any aspect of the" investigation. *2121 Arlington Heights Corp.*, 109 F.3d at 1224; *see also Kis*, 658 F.2d at 535 (explaining that "[t]he sole reason for the proceedings and for permitting

the taxpayer to intervene under section 7609 is to ensure that the IRS has issued the summons for proper investigatory purposes under section 7602 and not for some illegitimate purpose (such as, for example, using a civil summons to gather evidence to be used solely in a criminal prosecution)"); *Utecht*, 238 F.3d at 887 (indicating that the IRS cannot "improperly use[] its civil summons power to gather evidence for a criminal prosecution").

In the instant action, Petitioner has produced evidence to show that the IRS is examining Artex's role in transactions involving captive insurance plans under 26 U.S.C. § 831, and whether such transactions constitute abusive transactions. Petitioner has also shown that the Summonses might reveal relevant information in this case. Artex contends that the request for business records for a six-year period is overly broad. (Ans. Mot. 3). Petitioner has shown that it is not seeking an excessive amount of documents that would require extensive review for privileged information. Petitioner has shown that virtually all of the documents sought would include general business records that would not include privileged material. Petitioner has shown that its request is narrowly tailored to seek potential relevant information in the investigation. The Seventh Circuit has made clear that "[t]he information-gathering authority granted to the IRS under § 7602 is quite broad" and that "the Supreme Court has described § 7602 as the 'centerpiece' of a much larger congressional design to endow the IRS with expansive authority to conduct effective tax investigations." *Holifield v. United States*, 909 F.2d 201, 205 (7th Cir. 1990) (quoting in part *United States v. Arthur Young & Co.*, 465 U.S. 805, 815 (1984)).

The Summonses seek potentially relevant information within the scope of the broad investigatory authority provided to the IRS. Thus, Petitioner has shown that the Summonses were initiated for a legitimate purpose in order to seek relevant information.

B. Information Not in Government's Possession

Petitioner contends that it is seeking information from Artex in the Summonses that is not in Petitioner's possession. Artex has not shown otherwise. Therefore, Petitioner has met its burden on this element of its *prima facie* case.

C. Statutory Administrative Requirements

Artex argues that the IRS has not followed its own internal procedures in initiating the Summonses. Artex contends that the IRS did not follow an IRS Large Business and International Division directive dated November 4, 2013 (November 2013 Directive). (Ans. Mot. 4). However, the record reflects that the November 2013 Directive addresses information document requests (IDRs) rather than the enforceability of a summons. (Reply Ex. 2). Thus, the directive is not applicable to the Summonses that are the basis of this enforcement action. In addition, the court notes that to the extent that Artex contends that the November 2013 Directive applies to the IDRs issued to it by the IRS, the directive incorporated a June 18, 2013 directive, which provided that it applies to IDRs issued after June 30, 2013. (Reply Ex. 1-2). Petitioner asserts, and Artex has not disputed that the IDRs issued to Artex

8

were on June 28, 2013, two days before the effective date of the November 2013 Directive. Finally, the directives that Artex points to state the following: "This Directive is not an official pronouncement of law and cannot be used, cited, or relied upon as such." (Reply Ex. 2). Petitioner has thus shown that the IRS followed its administrative procedures in initiating the Summonses. Petitioner has thus established a *prima facie* case.

III. Abusive Practices

Artex argues that the IRS engaged in abusive practices when it issued the Summonses. Once the IRS has established a *prima facie* case, the burden shifts to the taxpayer to show that the enforcement of the summons would be an "abuse of process" or acted in bad faith. *BDO Seidman*, 337 F.3d at 809-10; *Miller*, 150 F.3d at 772. The taxpayer has a heavy burden to establish that the IRS abused its authority. *See BDO Seidman*, 337 F.3d at 809-10 (explaining that "[t]he IRS' broad power to investigate possible violations of the tax laws is understood to be vital to the efficacy of the federal tax system, 'which seeks to assure that taxpayers pay what Congress has mandated and to prevent dishonest persons from escaping taxation thus shifting heavier burdens to honest taxpayers'")(quoting in part *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)); *see also Miller*, 150 F.3d at 772 (stating "[o]nce the government meets its prima facie burden, the taxpayer faces a 'heavy burden' to either present facts to disprove one of the *Powell* factors, or to show that the IRS issued the summons in bad faith").

Artex contends that the IRS engaged in abusive practices because it would not enter into an agreement pursuant to Federal Rule of Evidence 502 (Rule 502), and argues that Petitioner has not given Artex reasonable deadlines to produce the necessary information in a cost-effective fashion.

A.  Rule 502 Agreement

Artex contends that the IRS should have agreed to enter into an agreement governed by Federal Rule of Evidence 502 (Rule 502). Rule 502 provides in part the following:

> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).
> (c) Disclosure Made in a State Proceeding. When the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure:(1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred.
> (d) Controlling Effect of a Court Order. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court--in which event the disclosure is also not a waiver in any other federal or state proceeding.
> (e) Controlling Effect of a Party Agreement. An agreement on the effect of disclosure in a federal proceeding is binding only on the parties to the agreement, unless it is incorporated into a court order. . . .

Fed. R. Evid. 502.  Artex argues that "[t]he IRS knew that any enforcement of the [S]ummonses would have to be made in the Northern District of Illinois and that the

policies of that District and of the Seventh Circuit Court of Appeals encourages, if not mandates, such accommodation." (Ans. Mot. 8). Artex contends that it needs to be protected from inadvertent disclosures. However, as Petitioner correctly points out, there is no requirement that the IRS enter into a Rule 502 Agreement. Nor does Artex cite any controlling precedent that would require the IRS to enter into such an agreement with Artex. As Artex acknowledges itself, a Rule 502 agreement is "an agreement with the other party. . . ." (Ans. Mot. 1). Nothing requires the IRS to enter into an agreement with Artex. Artex also argues that a Rule 502 agreement would have been a "reasonable accommodation" by the IRS. (Ans. Mot. 8). However, the IRS's obligations are not governed by what Artex believes to be reasonable and proper. Artex is required by law to provide the necessary information to the IRS regardless of Artex's opinion as to what the most reasonable method for production would be. Artex presents extensive arguments as to why the IRS's reasoning for not entering into a Rule 502 agreement is flawed and how the IRS will not be prejudiced by such an agreement. Artex argues, for example, that the IRS has "nothing to lose by entering into such an agreement." (Ans. Mot. 8). However, it is for the IRS to decide whether it will enter into such an agreement, and the court will not review the IRS's reasoning for such a decision. Artex cannot force the IRS to enter into such an agreement. Nor can Artex use the absence of a Rule 502 agreement as an excuse for refusing to provide the IRS with the requested information. Artex has not shown that a Rule 502 agreement should be required in this case and the sought after Rule 502 agreement appears to be nothing more than

further efforts by Artex to delay its production. The IRS has also shown that the vast majority of documents that would be produced pursuant to the Summonses would not be documents likely to contain any privileged materials and Artex has not shown that any privilege-review process would be nearly as onerous as Artex claims it would be without a Rule 502 agreement. Petitioner also correctly points out that a Rule 502 agreement would not relieve Artex from all obligations to avoid the disclosure of privileged information.

  B.  Procedures and Deadlines for Production

  Artex also argues that the IRS has not provided Artex with reasonable procedures and deadlines to produce the necessary information at a reasonable cost. The evidence shows that Artex was served with IDRs in the summer of 2013. Petitioner has shown that it issued the Summonses only after extensive efforts on the part of the IRS to obtain all necessary information from Artex. Petitioner has shown that Artex has had ample time to produce the necessary information and that such production will not be overly burdensome for Artex. Artex makes vague assertions that the production for the Summonses would be costly. However, the record shows that Artex should have been able to compile and produce the necessary information, by segregating emails and preparing a privilege log without the need to review "millions" of emails as Artex claims. (Ans. Mot. 4). Artex also argues that the IRS should make "reasonable accommodations for electronic discovery," but Artex fails to specify all of the precise accommodations that it seeks. (Ans. Mot. 1). Artex has

12

failed to substantiate its claims as to the burdens it faces in order to comply with the Summonses. Artex's objections as to the timing of its production appear to be yet another attempt by Artex to forestall its production and delay the IRS investigation. Artex also contends that a return date of January 9, 2014, was not reasonable, given that there were weekends and holidays within the time-frame. (Ans. Mot. 4). The IRS has shown that it made efforts well in advance of the issuance of the Summonses to obtain the necessary information. At this juncture, Artex has had the benefit of an additional eight months while the IRS proceeded through the necessary steps to enforce the Summonses. Artex has not shown that any deadlines set by the IRS were unreasonable. To allow Artex to further delay its production of information that the IRS has shown to potentially be relevant to the legitimate IRS investigation and to grant the relief sought by Artex would thwart the statutory investigatory power of the IRS. *Utecht*, 238 F.3d at 887 (explaining that the standard for summons enforcement "prevents defendants from unnecessarily imposing enormous administrative costs and delays in tax evasion prosecutions by engaging in extended fishing expeditions to support frivolous challenges").

Artex also contends that it was not provided with specific facts to justify the IRS investigation. Petitioner has shown that Artex has been provided with such a justification. Artex's demand for further justification from the IRS is yet another attempt by Artex to place roadblocks in the path of the IRS and further delay the investigation. Artex also complains that the IRS sent IDRs to Artex's clients and insureds, asserting that the IRS attempted "an end-run around the summons

13

enforcement process. . . ." (Ans. Mot. 12). However, Artex has not shown that the IRS acted improperly or violated any law in sending IDRs to other parties. Artex's complaint as to such IDRs is one more frivolous reason for refusing to comply with the Summonses.

Artex also claims that "the purpose of the Summonses could only have been to harass Artex. . . . ." (Ans. Mot. 10). Artex points to no evidence that the IRS was in any way attempting to harass Artex. The IRS has shown that the Summonses are part of a legitimate investigation.

Artex in essence has told the IRS that it will not comply with the Summonses until the IRS agrees to the conditions set by Artex. Artex, thus, is attempting to dictate to the IRS the conditions for Artex's production of information. The law, however, does not provide the taxpayer with the right to set its own production requirements. The record shows that the IRS acted appropriately in initiating the Summonses and that compliance with such Summonses is required under the law. Petitioner has shown that it has provided Artex with reasonable procedures and deadlines for the production of the required information. The IRS is granted broad authority to conduct investigations and the record shows that the IRS remained within the scope of such authority when issuing the Summonses. *Holifield*, 909 F.2d at 205 (stating that "[w]ith this congressional design in mind, the Court stated that, with the exception of the traditional privileges and limitations, 'other restrictions upon the IRS summons power should be avoided 'absent unambiguous directions from Congress'")(quoting in part *Arthur Young & Co.*, 465 U.S. at 816). Artex has

14

not shown that the IRS engaged in abusive practices or acted in bad faith. Based on the above, Petitioner's motion for rule to show cause is granted.

## CONCLUSION

Petitioner's motion for rule to show cause is granted. The Petition to enforce the Summonses is granted. This is a final and appealable order.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 11, 2014